IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-cr-30040 |
| ) | |
| KENNETH JACKSON, ) | |
| ) | |
| Defendant. ) | |

OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Defendant Kenneth Jackson filed a motion to suppress evidence. Pursuant to the Court's oral ruling on March 2, 2016, the motion (d/e 24) is DENIED.

I. **Background**

In August 2015, the Government filed a 4-count Indictment charging Jackson with committing various crimes in 2014 and 2015. Jackson's motion to suppress addresses the evidence relating to Count 3, which charges Jackson with intentionally possessing heroin with intent to distribute on July 18, 2014.

On March 2, 2016, the Court held a suppression hearing. Several Springfield Police Department officers testified: Detective Tim Zajicek, Detective Mike Flynn, Sergeant Brock Butcher, Officer Kim Cordery, and Officer Ron Howard.

The testimony established that, on July 18, 2014, Detective Zajicek arranged for a confidential informant to buy heroin from Jackson in the parking lot of the Schnucks grocery store just off of Chatham Road in Springfield. Before the drug sale, Detective Zajicek briefed his fellow officers—Detective Flynn, Sergeant Butcher, Officer Cordery, and Officer Howard—on the plan. Detective Zajicek would monitor the sale from an unmarked police vehicle in the Schnucks parking lot, and Detective Flynn would stand by in the parking lot across the street, also in an unmarked vehicle. Sergeant Butcher, Officer Cordery, and Officer Howard would wait elsewhere—Howard with a drug-detection dog at the ready—in marked police vehicles.

Detective Zajicek gave the informant $100 and waited as the informant stood outside Schnucks. Soon, Jackson arrived in the parking lot, driving a purple Saturn. Detective Zajicek watched the informant get into Jackson's car. After a few moments, the

informant got out and returned to Detective Zajicek's unmarked vehicle.  The confidential informant turned over the bag of heroin the informant had bought from Jackson.  The informant also reported seeing additional bags of heroin in Jackson's car.

Jackson began driving out of the Schucks parking lot, and Detective Zajicek notified his fellow officers and told them to follow Jackson.  Detective Flynn, driving his unmarked vehicle, followed Jackson as Jackson turned south onto Chatham Road and then east onto Wabash Avenue.  The other officers also proceeded eastbound on Wabash, somewhere behind Jackson and Detective Flynn.

Detective Zajicek confirmed over the radio that the drug transaction had proceeded successfully and that the officers should develop independent probable cause to conduct a traffic stop—a pretext intended to disassociate, from Jackson's perspective, the stop and the confidential informant's recent drug purchase. Detective Flynn followed Jackson eastbound on Wabash and continued following Jackson eastbound as Wabash becomes Stanford Avenue.  Detective Flynn followed Jackson at 45 miles per hour in a 30 mile per hour zone and observed Jackson change

lanes without signaling. Detective Flynn reported Jackson's traffic violations to Sergeant Butcher, who by this time was nearby. Sergeant Butcher then conducted a traffic stop.

After stopping Jackson, Sergeant Butcher approached Jackson's car on the driver's side. Jackson told Sergeant Butcher his name and birth date, though he did not have any identification. Sergeant Butcher ran a search on Jackson's name and began filling out traffic violation citation forms. Soon, Officer Cordery arrived on the scene with an officer-in-training, Officer Resendez.

Officers Cordery and Resendez asked Jackson to step out of the car, which Jackson did. The officers then asked Jackson for permission to search Jackson's person and car. Jackson consented to the search of his person but not to the search of the vehicle. The officers then called for Officer Howard, who had stopped his car 2 blocks away, to come to the scene with his drug-detection dog.

Within a minute of being called, Officer Howard arrived. Officer Howard deployed his drug-detection dog, Jax, around Jackson's vehicle, and Jax alerted to the presence of drugs near the driver's door. Officer Howard opened the door and saw bags of heroin wedged between the driver's seat and the door area. On the

car's center console area, Officer Howard found the money the informant had used to buy the heroin from Jackson in the Schnucks parking lot. Officers Cordery and Resendez arrested Jackson and took him to SPD headquarters.

At SPD headquarters, Jackson gave a videotaped statement. At the beginning of the 45-minute recording, Detective Flynn advised Jackson of his Miranda rights, and Jackson waived them. After the videotaping ended, Jackson was booked into the Sangamon County Jail. During the booking, the jail's staff found additional bags of heroin hidden on Jackson's person.

## II. Jackson's arguments

Jackson argues that the evidence should be suppressed under the exclusionary rule prohibiting the introduction of evidence obtained in violation of the Fourth Amendment. Jackson argues that the traffic stop was not supported by probable cause that he had committed any crime or traffic violation. The confidential informant, Jackson says, was too unreliable to create probable cause to stop Jackson based on the alleged drug transaction. Jackson reasons that, if the police <u>did</u> have probable cause to arrest him based on the drug transaction, then there was no purpose in

waiting for Jackson to commit a traffic violation before initiating the traffic stop.

As for the traffic stop itself, Jackson says, Detective Flynn admits that he did not use a radar gun to determine that Jackson was speeding, and the time element relating to Jackson's improper lane change "doesn't make sense." (Argument of defense counsel, March 2, 2016 suppression hearing.) In no event, Jackson argues, was there probable cause to stop Jackson's car.

And once the car was stopped, Jackson argues, the stop was unreasonably prolonged to allow for the drug-detection dog sniff; the Government has not provided evidence that the dog was properly trained; and Jackson's statements should be suppressed because he was not properly and timely given a <u>Miranda</u> warning.

Jackson also points to what he says are inconsistent signatures that appear on the documents labeled Defendant's Exhibit 1 and Government's Exhibits C1, C2, and C3, and to Detective Zajicek's admission that the timestamps that appear in Government's Exhibit B are not necessarily precise.

### III. Analysis

The Court finds that the officers had probable cause to arrest Jackson and search his car, based on the drug transaction in the Schnucks parking lot. Officers may arrest a person if they have probable cause to believe the person committed a crime. United States v. Mosby, 541 F.3d 764, 767-68 (7th Cir. 2008). Further, officers may conduct a warrantless search of a car if they have probable cause to believe the car contains contraband or evidence of a crime. United States v. Williams, 627 F.3d 247, 251 (7th Cir. 2010).

Here, Detective Zajicek gave $100 to a confidential informant and observed the informant get into Jackson's car and return without the $100 and with a bag of heroin. This was sufficient to generate probable cause to stop and arrest Jackson. See Mosby, 541 F.3d at 767-68 (stop of defendant's car and arrest of defendant justified where police had seen defendant commit a crime); Williams, 627 F.3d at 252 (stop of defendant's car and search of defendant justified where police had probable cause to believe defendant had just purchased illegal drugs). And because officers may conduct a warrantless search of a car if they have probable

cause to believe the car contains contraband or evidence of a crime of this, it does not matter whether the traffic stop was pretextual. Williams, 627 F.3d at 253 (approving of officers' efforts to "conceal the existence of the DEA investigation and wire taps" by disguising stop as traffic stop).

Further, even if the officers somehow did not have probable cause to arrest Jackson and search his vehicle based on the drug sale, the stop was independently justified after the officers developed probable cause to stop Jackson on the basis of Jackson's traffic violations.  The Government presented unrefuted testimony from Detective Flynn that Detective Flynn followed Jackson's car at 45 miles per hour in a 30-mile-per-hour zone and saw Jackson change lanes without signaling to avoid a back-up of cars in the left lane as he approached Sixth Street.  See United States v. Moore, 375 F.3d 580, 583 (7th Cir. 2004) (police may stop vehicle if they have probable cause to believe driver committed traffic violation).

Under normal circumstances, a dog-sniff conducted during a traffic stop poses no Fourth Amendment issues.  Illinois v. Caballes, 543 U.S. 405, 410 (2005) (upholding dog sniff that second officer conducted while first officer wrote warning ticket).  But if a stop is

justified solely by the interest in issuing a ticket, the stop becomes unlawful if it is "prolonged beyond the time reasonably required to complete that mission." Id. at 407.  When the tasks related to the stop's purpose have ended—or reasonably should have ended—the authority to detain the car's occupants ends as well. Rodriguez v. United States, 135 S.Ct. 1609, 1612 (2015) ("Authority for the seizure … ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.").

Here, the evidence establishes that the stop was not unreasonably prolonged to wait for the drug-detection dog. Sergeant Butcher testified that he began filling out the traffic citations upon returning to his car after speaking with Jackson. Sergeant Butcher's testimony also established that the traffic stop began at 11:59 a.m. and that Officer Howard arrived with the drug-detection dog at 12:03 p.m.—a span of 4 minutes.  The Court finds that the stop was not extended beyond the reasonable amount of time necessary to complete the tasks related to the stop, and so the stop remained lawful through the dog's arrival and ultimate alert. Caballes, 543 U.S. at 410.  And once the dog alerted to Jackson's car, the officers had probable cause to search the car on that basis.

Id.  Of course, as mentioned above, because the stop was in fact justified by the drug sale, the length of time before the dog arrived is irrelevant.

Regarding the drug-detection dog's training, the dog's training is irrelevant because the officers had probable cause to search Jackson's car based on the drug sale.  Williams, 627 F.3d at 251 (officers may conduct warrantless search of car if they have probable cause to believe car contains contraband or evidence of crime).  Further, even if the police had probable cause to stop Jackson only because of the traffic violation, the Government presented unrefuted evidence that Officer Howard and the dog were certified at all relevant times and that the dog was well-trained and reliable.  See United States v. Klein, 626 F.2d 22, 26 (7th Cir. 1980) (rejecting defendants' argument that Government did not establish dog's reliability, as affiant averred dog "graduated from a training class" and "ha[d] proven reliable in detecting drugs and narcotics on prior occasions").

Regarding the issue of whether Jackson was properly Mirandized, the Government presented unrefuted testimony that

Detective Flynn Mirandized Jackson at the start of Jackson's videotaped statement and that Jackson waived his <u>Miranda</u> rights.

Finally, although Jackson has noted that the timestamps on Government's Exhibit B are not precise and that inconsistent signatures appear on Defendant's Exhibit 1 and Government's Exhibits C1, C2, and C3, these discrepancies do not overcome the overwhelming evidence that the officers had probable cause to arrest and search Jackson and his car.  If anything, the officers developed more probable cause—and Government presented more evidence to support such a finding—than necessary.

**IV.  Conclusion**

For the reasons above, the Court finds that probable cause existed to arrest and search Jackson and his car on July 18, 2014.  As stated in the Court's oral ruling on March 2, 2016, Jackson's motion to suppress (d/e 24) is DENIED.

ENTERED:  March 8, 2016

FOR THE COURT:                <u>s/ Sue E. Myerscough</u>
                              SUE E. MYERSCOUGH
                              UNITED STATES DISTRICT JUDGE